Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4704 | **DATE** | 1/8/2001 |
| **CASE TITLE** | Fyrnetics vs. Quantum Group | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, the Court denies plaintiff's motion to reconsider.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | 1/11/01 | |
| | Notified counsel by telephone. | | date docketed | 43 |
| ✓ | Docketing to mail notices. | | C.S. | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | 01 JAN 10 PM 4:51 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JAN 1 1 2001

| | | |
|---|---|---|
| FYRNETICS (HONG KONG) LTD. and WALTER KIDDE PORTABLE EQUIPMENT, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 99 C 4704 |
| QUANTUM GROUP, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Court previously ruled after an evidentiary hearing that the dispute that gave rise to this action is subject to a mandatory arbitration provision in a contract that the Court concluded applied. Plaintiffs Fyrnetics (Hong Kong) Ltd. ("FHK") and Walter Kidde Portable Equipment, Inc. ("Kidde") have moved for reconsideration of the Court's ruling. For the reasons that follow, the Court denies plaintiffs' motion.

### Introduction

Familiarity with the Court's previous ruling, reported at 2000 WL 1139907, is assumed. The Court will review the facts only as necessary to establish a context for the present motion.

The agreement containing the arbitration provision that the Court concluded governs the present dispute is a June 1996 License Agreement between defendant Quantum Group, Inc. and Fyrnetics, Inc. In the Agreement, Quantum granted Fyrnetics a non-exclusive license to make and sell carbon monoxide ("CO") detectors equipped with CO sensors made by Quantum. The

Agreement allowed Fyrnetics to sublicense its affiliates (entities with common ownership) and required Fyrnetics to pay Quantum a royalty based on the sales of CO detectors. It required arbitration of "[a]ny claim or controversy arising between the parties hereto in connection with this Agreement, or with a claimed breach thereof." The Agreement also stated that it could not be assigned "except in its entirety by [Fyrnetics] as a part of a sale of [Fyrnetics'] entire business ... upon prior written notice to Quantum, and then only if the assignee agrees in writing to be bound by the terms hereof as if named herein in place of [Fyrnetics]."

In late January or early February 1997, Kidde, a subsidiary of Williams PLC, purchased Fyrnetics' stock. Another subsidiary of Williams PLC purchased FHK around the same time, making the two companies "affiliates" as that term was defined in the License Agreement.

When Kidde purchased Fyrnetics, Fyrnetics and Quantum discussed what would become of the License Agreement. They agreed that it was unnecessary to make an assignment of the Agreement in order for it to remain in effect. The Court has previously found that the Agreement did remain in effect following Kidde's purchase of Fyrnetics.

The dispute that gave rise to this case arose from FHK's purchase of CO sensors from Quantum. FHK installed the sensors into CO detectors that it manufactured and then sold to Fyrnetics.[1] FHK later learned that some of the Quantum sensors that it had installed in CO detectors between June 1997 and January 1998 had failed, causing the CO detectors to

---

[1] FHK also sold some of the detectors to Kidde and another affiliated company called Pyrene. Thomas Russo, who was president and CEO of Fyrnetics and "director" of FHK, testified that FHK sold the detectors containing Quantum's CO sensors "[t]o Fyrnetics, Inc., and I also believe the Pyrene trademarks and Kidde trademarks were also eventually used." Hearing Tr. 120.

2

malfunction. Some 450,000 detectors were recalled, at a cost of over $14 million.

In June 1998, following the sale of the allegedly defective sensors, Kidde caused Fyrnetics to be merged into Kidde; Fyrnetics was formally dissolved as a corporate entity.

### The Court's ruling

The Court found that the License Agreement was in full force and effect at the time the allegedly defective sensors were sold by Quantum to FHK. We further found that the parties understood that Quantum's sales of CO detectors to FHK were made pursuant to the License Agreement. The Court found that FHK, as an affiliate of Fyrnetics, was acting as Fyrnetics' sublicensee under the License Agreement. We rejected as lacking in credibility the testimony of Thomas Russo, Fyrnetics' president / CEO and "director" of FHK, that in purchasing the CO sensors, FHK was acting pursuant to a verbal understanding with Quantum rather than pursuant to the written agreement. We concluded that because the dispute arose from an agreement that required arbitration of disputes, plaintiffs were required to arbitrate, rather than litigate, their dispute.

### Plaintiff's motion for reconsideration

Plaintiffs' motion for reconsideration consists in significant part of a list of points that plaintiffs made in their earlier arguments and that the Court considered in its ruling. None of these are appropriate topics for a motion for reconsideration. *See, e.g., Jefferson v. Security Pacific Financial Services, Inc.*, 162 F.R.D. 123, 125 (N.D. Ill. 1995) (motion to reconsider should not seek "instant replay"); *In re Oil Spill by the "Amoco Cadiz,"* 794 F. Supp. 261, 267 (N.D. Ill. 1992) (motion to reconsider should not "rehash" old arguments). Rather, "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present

3

newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987). Reconsideration is appropriate when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

In the Court's judgment, plaintiffs have made three points that merit further discussion. First, they contend that the Court did not address the fact that neither plaintiff was a named party to, or ever signed, the License Agreement. Second, they contend that the Court did not consider that plaintiffs' claims are not made under the License Agreement and thus do not fall within the scope of that Agreement's arbitration requirement. And third, they contend that the Court ordered the parties to arbitrate in San Diego, which they say the Court had no jurisdiction to do.

### Discussion

**A.  Are plaintiffs' claims of the type to which the arbitration agreement applies?**

Plaintiffs suggest that because they are not making claims under the License Agreement, their claims cannot be subject to arbitration. But the arbitration clause is not limited to claims made under the Agreement; it reaches all controversies "in connection with" the Agreement. The Court has found that the allegedly defective CO sensors were supplied by Quantum to FHK pursuant to the License Agreement. The License Agreement created a relationship under which Quantum agreed to supply Fyrnetics (or its sublicensee) with sensors. For this reason, the controversy regarding the defects in the sensors arises from the relationship that the Agreement created and therefore is a controversy "in connection with" the Agreement.

The arbitration clause in this case is similar to those which require arbitration of disputes

4

"arising out of" a contract. The law is clear that in such a case, arbitration is not limited to claims for breach of contract but rather covers all disputes having their origin or genesis in the contract. *See, e.g., Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress, International, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993). In this case, the CO sensors that are the subject of the dispute were sold pursuant to the License Agreement; for this reason, the dispute has its genesis in that Agreement. The dispute is a controversy "in connection with" the Agreement even if plaintiffs are not making claims for breach of that contract.

**B.  Are plaintiffs subject to the License Agreement's arbitration requirement?**

Neither Kidde nor FHK signed the agreement that contains the arbitration requirement. Plaintiffs argue that because arbitration is a matter of contract, as non-parties they cannot be required to submit to arbitration disputes that they have not consented to submit. *See* Pltf. Mem. at 3, citing among other cases *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643 (1986). But "'[i]t does not follow ... that under the [Federal Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision.'" *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) (quoting *Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir. 1960)). In an appropriate case, a non-signatory may be bound by an arbitration provision in a contract executed by other parties. *Id.* at 417-18. For example, if claims against two affiliated companies are based on the same facts and are inherently inseparable, the claims against both may be referred to arbitration even though just one of the companies is a party to the arbitration agreement. *Id.* at 417, citing *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir. 1988) and *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757

5

(11th Cir. 1993). In addition, common law principles of contract and agency law, such as the doctrines of assumption, agency, estoppel, veil-piercing, and third party beneficiary, may provide a basis for binding a non-signatory to an arbitration agreement. *See, e.g., Thomson-CSF, S.A. v. American Arbitration Association*, 64 F.3d 773, 776 (2d Cir. 1995); *Dietz v. Northeast Illinois Regional Commuter Railroad Corp.*, No. 00 C 889, 2000 WL 1809969, at *1 (N.D. Ill. Dec. 11, 2000) (citing cases regarding third party beneficiary issue).

Based on the evidence presented to the Court at the hearing, *see* fn.1 *supra*, the primary entity to which FHK sold the CO detectors with the defective sensors was Fyrnetics, which at the time still existed as a corporate entity even though it was owned by Kidde. Fyrnetics, however, no longer exists; Kidde caused the company to be merged into Kidde in 1998 and then dissolved Fyrnetics as a separate entity. But even though Kidde is one of the two named plaintiffs in this case, its claims are in large part derivative of those of Fyrnetics, which unquestionably was a party to the License Agreement. If Fyrnetics still existed today, it would be one of the plaintiffs in this case.

When Kidde caused Fyrnetics to be merged into Kidde and then dissolved, Kidde voluntarily assumed the obligations of Fyrnetics' License Agreement. Kidde knew what it was getting into; the merger and dissolution of Fyrnetics came just over a year after Kidde completed its acquisition of Fyrnetics, a transaction that included documentation suggesting that Kidde was assuming the License Agreement. Kidde, which is making claims that are partly those of Fyrnetics, cannot escape application of the License Agreement's arbitration requirement by effectively legislating Fyrnetics out of existence.

FHK is subject to the arbitration agreement as well. Though it was not a party to the

6

contract, and unlike Kidde did not effectively acquire a party to the contract, the Court has held that FHK was Fyrnetics' sublicensee under the License Agreement. The Agreement authorized Fyrnetics to "sublicense its Affiliates," and as indicated earlier and in our previous ruling, FHK met the Agreement's definition of "Affiliate." The same provision of the Agreement that authorized Fyrnetics to sublicense its affiliates specifically provided that "[e]ach Affiliate so sublicensed shall be bound by the terms and conditions of this Agreement as if it were named herein in the place of Licensee." Lic. Agr. ¶I.A.(2). In short, FHK is bound not because it is a sister company of Fyrnetics, but because in becoming a sublicensee it assumed an obligation to be bound by the License Agreement's provisions. *See Thomson-CSF,* 64 F.3d at 777 (non-signatory may be bound by arbitration provision if its conduct indicates it is assuming the obligation to arbitrate). Indeed, FHK evidenced its assumption of the Agreement's obligations by paying royalties to Quantum in the percentage amount provided by the Agreement. For this reason, the Court reaffirms its conclusion that FHK is bound by the Agreement's arbitration provision. *See also McAlister Brothers, Inc. v. A&S Transportation Co.,* 621 F.2d 519 (2d Cir. 1980) (non-signatory may be bound by arbitration agreement in contract that specifically provided that companies affiliated with signatory were contractually bound).

C.  **Place of arbitration**

Contrary to plaintiffs' argument in their motion to reconsider, the Court did not direct the parties to arbitrate in San Diego. Rather, the Court simply recognized that under the License Agreement, if initiated by Fyrnetics (which as discussed earlier effectively includes FHK and Kidde for purposes of this case), arbitration must take place in San Diego. The Court assumed that as the parties initiating this case, plaintiffs would want to pursue arbitration and that they

7

would therefore be required to do so in San Diego.[2] And under the Federal Arbitration Act and the License Agreement, if arbitration proceeds in San Diego the result will have to be confirmed by a court in that jurisdiction as well. *See* 9 U.S.C. § 9; Lic. Agr., ¶ III.K.(15). For this reason, the Court dismissed the complaint rather than staying the case pending the completion of arbitration proceedings. We continue to believe that this was the appropriate course.

## Conclusion

For the foregoing reasons, the Court denies plaintiffs' motion to reconsider.

MATTHEW F. KENNELLY
United States District Judge

Date: January 8, 2001

---

[2] The Court's earlier decision contained a scrivener's error; we said that "arbitration must take place in San Diego, California if initiated by Quantum" when we meant to say that "arbitration must take place in San Diego, California if initiated by Fyrnetics." *See* 2000 WL 1139907, at *5.

8